**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 08-107-DLB**

**DEBORAH A. WIDENER**                                                                             **PLAINTIFF**

**vs.**                     **<u>MEMORANDUM OPINION & ORDER</u>**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                            **DEFENDANT**

\*    \*    \*    \*    \*    \*    \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Deborah Widener filed an application for supplemental security income (SSI) payments on November 22, 2000. (Tr. 18).[1] Plaintiff alleges she became unable to work on June 1, 2000 due to cervical cancer and has remained disabled due to ongoing severe pelvic/abdominal pain and complications resulting from the chemotherapy and radiotherapy used to treat her cancer. (Tr. 18) Her application was denied initially and upon reconsideration. (Tr. 33-36, 38-40). At Plaintiff's request, an administrative hearing was conducted on March 5, 2002, by Administrative Law Judge (ALJ) Deborah Smith. (Tr. 488-95). On August 22, 2002, the ALJ ruled that Plaintiff was not disabled and therefore

---

[1] Plaintiff's SSI application was not made a part of the administrative record.

not entitled to SSI payments. (Tr. 127-35). On June 22, 2005, the Appeals Council vacated the ALJ's hearing decision and remanded the case for further proceedings - including a new decision - because the administrative record on which the ALJ's decision was based could not be located. (Tr. 141-42). With the help of Plaintiff's counsel, the administrative record was reconstructed, and a supplemental hearing was held on June 19, 2006. (Tr. 552-83). ALJ Smith issued a second decision on December 19, 2006, ruling again that Plaintiff was not disabled under the social security regulations. (Tr. 18-29). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 28, 2008. (Tr. 7-10).

On June 10, 2008, Plaintiff filed the instant action. (Doc. #1) The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 8, 9).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d

2

388, 389-90 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

    **B.**    **The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. 20). At Step 2, the ALJ determined Plaintiff's history of cervical cancer treated without evidence of recurrence and polysubstance abuse (alcohol, cocaine, and prescription drugs) to be "severe" impairments within the meaning of the regulations. (Tr. 20).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in

20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21). Specifically, the ALJ noted that, because Plaintiff's cancer had remained in remission without evidence of recurrence or metastasis since January 2001 and her ongoing substance abuse cannot supply a valid basis for entitlement to disability benefits, Plaintiff's condition did not meet or equal the requirements of any listing. (Tr. 21).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform a full range of light work. (Tr. 21). Specifically, the ALJ found that Plaintiff can lift/carry 25 pounds occasionally, 20 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; is unlimited in pushing and/or pulling; and has no manipulative, visual, communicative, or environmental limitations. (Tr. 21). However, "she is limited to performing simple, routine, repetitive work secondary to her ongoing problem with drugs." (Tr. 21).

As Plaintiff had no past relevant work to which she could return (Tr. 27), the ALJ continued to the final step of the sequential evaluation. At Step 5, the ALJ considered Plaintiff's age (40), education, work experience and RFC in conjunction with the Medical-Vocational Guidelines and testimony from a vocation expert (VE) and concluded that there exist a significant number of jobs in the national economy Plaintiff can perform despite her functional limitations - such as food batcher, hand packager, assembly worker, and laborer. (Tr. 28). Consequently, the ALJ found that Plaintiff has not been under a disability as defined by the Social Security Act. (Tr. 29).

### C. Analysis

Plaintiff advances three arguments on appeal. First, Plaintiff argues that the RFC articulated by the ALJ is not supported by substantial evidence because the ALJ based her

assessment of Plaintiff's functional capacity on the report of consultative physician who did not consider, or comment upon, how many days per month Plaintiff would miss work due to necessary ureteral stent replacement.  Second, Plaintiff contends that the ALJ erred in considering the opinion of the vocational expert because the expert improperly based his opinion as to the availability of jobs Plaintiff could perform on the Americans with Disabilities Act (ADA), 42 U.S.C. §§12101-12113.  Third, Plaintiff alleges the ALJ erred in failing to consider whether Plaintiff might be entitled to a closed period of disability.  Each of these arguments will be addressed in turn.

### 1. Opinion of Consultative Examiner Ralph Huller

Plaintiff's first argument - that the ALJ erred in basing Plaintiff's RFC upon the report of consultative examiner Ralph Huller - is wholly without merit.  Plaintiff bases this argument, not on any allegation that Dr. Huller's medical assessment was somehow faulty, but on the erroneous complaint that Dr. Huller "never discussed or commented on how many days of work a month Ms. Widener would miss due to her stent replacement surgery."  (Doc. #8 at 6).  However, a cursory reading of Dr. Huller's brief report reveals that Dr. Huller was aware that Plaintiff had a ureteral stent that required periodic surgery to replace: "She continues to require stent replacement for the obstructed ureter on a three or four times a year basis.  For this she requires an overnight one-day stay in the hospital." (Tr. 417).

The regulations require the ALJ to consider all of the opinion evidence in the record. 20 C.F.R. § 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").  Therefore, because Plaintiff has not presented any reason based in fact which discredits Dr. Huller's medical assessment, the ALJ did not err in adopting Dr.

5

Huller's findings.

### 2. Reliance on the Americans with Disabilities Act

Plaintiff also alleges the ALJ erred in finding, at Step 5 of the sequential evaluation, that there exist a significant number of jobs in the national economy which Plaintiff could perform despite her need for periodic stent replacement. Specifically, Plaintiff asserts that the ALJ should not have relied upon the VE's testimony because he improperly based his assessment of the availability of relevant jobs on the assumption that employers would accommodate Plaintiff's stent-related absences under the ADA. The Court agrees.

During the administrative hearing conducted on June 19, 2006, in response to a question from Plaintiff's counsel which presupposed that Plaintiff would have to miss three days of work every three months due to stent replacement, the VE testified as follows:

> But when you think about she is going to miss three on a scheduled basis every three months for inpatient treatment or whatever, the truth of the matter is she probably would . . . lose the job eventually, but that's one of those situations where I would presume it would be an accommodation if she was hired, because she knows she's not going to be there for three days every three months.

(Tr. 578). The VE further testified that, absent an accommodation, if Plaintiff missed three days every three months, she would eventually lose any job she had the capacity to perform: "[W]hat I'm saying is, it's, that's one of those odd factors, that if you know you're going to do it before you get there, but if you just take the general, yes, she would be done in three months." (Tr. 578-79).

The ALJ found this testimony persuasive. Rejecting Plaintiff's contention that she would be fired from employment due to absences related to ureteral stent replacement, the ALJ states in her opinion:

6

> The claimant could work a job including weekends whereby she would not have to miss work every time she needed a stent replaced. . . . [T]he undersigned is persuaded by the impartial vocational expert that an employer would reasonably accommodate the claimant knowing, in advance, of the arrangement, and considering the guidelines of the American [sic] with Disabilities Act and the flexible work hours of numerous places of employment which would not even require a special accommodation.

(Tr. 27). Plaintiff contends the provisions of the ADA are irrelevant to a determination of disability under the Social Security Act, and argues the ALJ's consideration of the ADA requires this Court to remand her case to the Commissioner for an award of benefits.

Although the Sixth Circuit Court of Appeals has not addressed the interplay between the Social Security Act and the ADA in the context of an administrative disability determination, it has observed in other circumstances that "the Social Security Administration does not consider whether an individual is able to work with reasonable accommodation in determining entitlement to disability benefits." *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir. 1998); *see also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) ("[W]hen the SSA determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI.").

However, two Circuits - the Fifth and the Eighth - have considered the specific issue raised by Plaintiff, and both held it to be error for a VE to cite jobs based on assumptions about employer accommodations, rather than on how jobs are normally performed in the competitive market. *See Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999) ("[A] vocational expert should not base his determination of the availability of jobs on the assumption that the ADA requires an employer to accommodate an individual's disability."); *Eback v.*

7

*Chater*, 94 F.3d 410, 412 ("'[The inquiry into other available jobs is based on the functional demands and duties of jobs as ordinarily required by employers throughout the national economy, and not on what may be isolated variations in job demands (regardless of whether such variations are due to compliance with anti-discrimination statutes or other factors).'" (quoting Memorandum from Daniel L. Skoler, Associate Comm'r for Hearings and Appeals, SSA, to Administrative Appeals Judges, reprinted in 2 Social Security Practice Guide, App. § 15C[9], pp. 15-401 to 15-402 (1998))).

This Court is persuaded by the authorities cited above that "the ADA and the disability provisions of the Social Security Act have different purposes and have no direct relationship to each other." *Eback*, 94 F.3d at 412. Therefore, the ALJ erred in relying upon the VE's testimony, and in referencing the ADA in her analysis of whether Plaintiff's functional limitations - including necessary stent replacement - prevent her from engaging in any substantial gainful activity.

Nonetheless, the ALJ's error does warrant an award of benefits to Plaintiff; rather, because the record does not adequately establish Plaintiff's entitlement to benefits, this matter must be remanded pursuant to sentence four of 42 U.S.C. § 405(g). As discussed above, the VE opined on Plaintiff's ability to maintain employment while missing three days of work every three weeks due to stent replacement. The ALJ, however, rightly rejected Plaintiff's contention that her inpatient stent replacement surgery would always require her to miss three days of work: "[T]he record documents and the claimant admitted that this procedure is accomplished in an overnight hospital stay." (Tr. 27). The VE did not testify regarding whether - absent consideration of accommodations under the ADA or alternative work schedules - there exist jobs in the national economy Plaintiff can perform despite her

need to undergo an *overnight* hospital stay every three months. Consequently, the ALJ's finding that there exist a significant number of jobs that Plaintiff can perform despite her need to undergo overnight stent replacement surgery every three months is not supported by substantial evidence, and remand for further proceedings is required.

### 3. Closed Period of Disability

Finally, Plaintiff contends the ALJ erred by failing to consider whether she might be entitled to a closed period of disability benefits. In support of this contention, Plaintiff argues that, even if she is currently physically capable of performing work activities on a sustained basis, for a three-year period beginning November 2000 Plaintiff underwent a number of significant medical treatments and surgeries that precluded her from working.[2]

Disability benefits can be awarded for a closed period. In *Myers v. Richardson*, 471 F.2d 1265 (6th Cir. 1972), the Sixth Circuit Court of Appeals held that while "[t]he [Social Security Act] itself does not provide for a closed period of benefits . . . we think it clear that such a closed period of benefits may be awarded." *Id.* at 1267. A claimant who meets the twelve-month durational requirement of 42 U.S.C. § 423(d)(1)(A) may be entitled to benefits from the time her disability commences until such time as the disability ceases. *See Howse v. Heckler*, 782 F.2d 626 (6th Cir. 1986).

In this case, the ALJ did not specifically make a finding regarding whether Plaintiff's impairments entitle her to a closed period of disability benefits. Rather, the ALJ's decision focuses on Plaintiff's physical condition at the time of the hearing, devoting much of her

---

[2] During this three-year period, Plaintiff was hospitalized numerous times to undergo various procedures, including: radiation and chemotherapy, colostomy surgery and take-down, fistula repair, hysterectomy, and several stent replacements. (Doc. #8 at 7).

9

analysis to discussion of Plaintiff's continued drug abuse and need for periodic stent replacement. Consequently, because the ALJ failed to address whether Plaintiff was entitled to a closed period of disability, the Court concludes that remand is required so that the ALJ may make specific findings regarding whether Plaintiff's multiple surgeries during the three-year period beginning November 2000 rendered her disabled during that discrete period. *Accord Lang v. Sec'y of Health & Human Servs.*, No. 88-1561, 1989 WL 40188, at *2 (6th Cir. Apr. 12, 1989) (remanding case for further proceedings where ALJ did not specifically make a finding regarding whether plaintiff's impairments entitled him to a closed period of disability).

### III.    CONCLUSION

This matter is remanded for administrative proceedings consistent with this opinion. On remand, the ALJ shall consider whether there exist a significant number of jobs that Plaintiff can perform despite her need to undergo overnight stent replacement surgery every three months. In making this determination, the ALJ shall base her determination on the functional demands and duties of jobs as ordinarily required by employers throughout the national economy, and shall not consider whether or how an employer might be willing or required to accommodate Plaintiff's stent-related absences. In addition, the ALJ shall make specific findings regarding whether Plaintiff's multiple surgeries during the three-year period beginning November 2000 entitle her to a closed period of disability.

Accordingly, for the reasons stated, **IT IS ORDERED** as follows:

1. The decision of the Commissioner is hereby **REVERSED**, with this action **REMANDED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #8) is hereby **GRANTED**;

3. Defendant's Motion for Summary Judgment (Doc. #9) is hereby **DENIED**;

4. A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

This 27th day of August, 2009.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\2-08-107-WidenerMOO.wpd